IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 8, 2017

**STATE OF TENNESSEE v. RAYMOND ARTHUR KLEIN**

**Appeal from the Circuit Court for Montgomery County**
**No. 41201121        William R. Goodman, III, Judge**

————————————————————

**No. M2017-00061-CCA-R3-CD**

————————————————————

The defendant, Raymond Arthur Klein, appeals his convictions and sentences for aggravated sexual battery and criminal attempt to commit rape of a child. The defendant argues there is insufficient evidence to support the jury's verdict. Additionally, the defendant argues a violation of his Sixth Amendment right to confront the witnesses against him because he was not permitted to introduce the results of a polygraph examination from a prior investigation. Finally, the defendant argues his sentence was improperly ordered to be served consecutively to a prior sexual battery conviction. Following our review, we affirm the judgments and sentence of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and D. KELLY THOMAS, JR., JJ., joined.

Jacob W. Fendley, Clarksville, Tennessee, for the appellant, Raymond Arthur Klein.

Herbert H. Slatery III, Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; John W Carney, District Attorney General; and David H. Findley, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

A. Trial

On June 12, 2012, a Montgomery County grand jury indicted the defendant for three counts of sexual exploitation of a minor, one count of rape of a child, and one count of aggravated sexual battery. The State ultimately dismissed the three sexual exploitation counts, and the defendant went to trial on the rape of a child and aggravated sexual

battery charges. The victim in this case, A.K., is the defendant's daughter and was six years old at the time of the abuse.[1]

M.K., the victim's mother and the defendant's former wife, initiated the investigation of the defendant after the victim disclosed the abuse.[2] M.K. stated that in December of 2010, she and the defendant were in the process of getting a divorce, despite still residing in the same house. M.K. indicated a desire to return to New York once the divorce was finalized. She stated that prior to the accusation the defendant was likely to receive custody of the victim for 100 days out of the year as part of the proposed parenting plan.

M.K. testified that the victim had diaper rash problems when she was younger, which necessitated applying lotion to the victim's vaginal areas. At one point the defendant had informed M.K. that the victim had placed his hand on her vaginal area because she was "itchy." The defendant at this point expressed concern to M.K. that the victim was being abused.

M.K. also stated she would often see the defendant and the victim under the bed covers together watching cartoons. She did not see this as a concern because, "[it] was [the victim's] father." M.K. indicated that in December 2010 the victim told her the defendant had been abusing her. M.K. contacted the police and confronted the defendant. When asked by M.K. "Why [the defendant] had done it," the defendant asked "When?" M.K. testified that she had not instructed the victim to fabricate the allegations or the facts surrounding them.

On cross-examination, M.K. was asked about the contentious nature of the divorce. M.K. responded that her marriage to the defendant was not stable and that they had separated "a few times" throughout the course of the marriage.

Additionally, M.K. was questioned about a prior allegation of abuse against the defendant concerning the victim. M.K. testified that after this prior allegation surfaced, she contacted the Department of Child Services ("DCS"). In response, DCS began an investigation, and, as part of this investigation, the defendant was given a polygraph examination. The polygraph results did not indicate the defendant had abused the victim,

---

[1] It is the policy of this Court to refer to victims of sexual abuse by their initials. For purposes of this opinion "the victim" will refer to A.K. unless otherwise noted.

[2] In order to further protect the victim's identity, we will utilize initials when referring to her mother.

and DCS concluded the allegations were unfounded.  While M.K. was being questioned about the DCS investigation on cross-examination, the following exchange took place:

>Defense counsel: Okay.  And DCS investigated this?
>
>Victim's mother: Yes.  They did
>
>Defense counsel: [The defendant] took a polygraph examination and passed it?
>
>Prosecution: Objection, your Honor
>
>Trial court: Sustained
>
>Defense counsel: Well, Judge, I'm just trying to get why she stayed with him.
>
>Trial court: Alright.  Just Ask.  Sustained.
>
>Defense counsel: And you decided to stay with him after DCS did their investigations.  Correct?
>
>Victim's mother: Yes.
>
>Defense counsel: So those allegations were unfounded?
>
>Victim's mother: Yes.

M.K. testified that she did not find the prior allegation to be as serious as the December abuse.  When asked what set the prior accusation apart, she stated the victim was very "nonchalant" in recounting what happened to prompt the DCS investigation, but the victim was "very, very upset" while relating the abuse that occurred in December 2010. M.K. indicated the victim had a "nickname" to describe the 2010 abuse: "the secret."

At the conclusion of M.K.'s testimony, a bench conference was held to further discuss the defendant's question about the polygraph examination.  At the conclusion of the bench conference, the trial court issued a curative instruction directing the jury not to consider the question relating to the polygraph examination.  Specifically the trial court instructed the jury:

All right, Ladies and Gentlemen, there was a question asked on cross-examination of [M.K.], question asked that had the word polygraph in it, and I am instructing you at this point to disregard that question; to put that question out of your mind and to not speculate as to what the response would be.

The State next called Detective Larry Boren, of the Clarksville Police Department, who was in charge of investigating the victim's allegations. When Detective Boren spoke to the defendant, the defendant claimed the only time he touched the victim was to apply the lotion for her diaper rash. Detective Boren testified further that the defendant told him that he would routinely watch cartoons with the victim in his bed and other places in the house. Finally, Detective Boren indicated he gained all the information concerning the abuse of the victim from M.K. and the defendant and that he did not interview the victim.

The State then called the victim, who was twelve years old at the time of trial, and who was six years old when the abuse occurred. When asked on direct examination "about the time [the defendant] did something," the victim responded she was in the defendant's bedroom, in bed with defendant. The victim testified about the design of the comforter on the bed and the television show they were watching. The State asked the victim: "[T]his time we are talking about where you and your dad are laying in the bed watching [cartoons], where were your dad's hands?" The victim responded: "[T]hat's when my dad would do the thing to me." The victim proceeded to testify the defendant would pull down her underwear, rest his hands on her vagina, rub "in a circle" on her vagina, as well as digitally penetrate her.

When questioned about why she did not tell her mother, the victim testified the defendant told the victim her mother would "leave her behind or not believe her." The victim testified due to these threats, she did not come forward because "she [could not] imagine life without her [mother]." The victim also testified she was unaware her parents were going through a divorce at the time of the abuse. When asked about her current opinion of the defendant, the victim stated "she still loved him" but "if [the defendant] loved [her] why would he do it."

The State concluded its direct examination of the victim by asking about what she did for Christmas that year. The victim testified that she traveled to Long Island to see her grandparents and recalled they were "happy to see her." The State then asked if the abuse "happed[ed] before [the victim] went to Long Island for Christmas." The victim confirmed that it had.

Sue Ross, a forensic interviewer with Our Kids Center in Nashville, testified that she interviewed and conducted a physical examination of the victim. According to Ms. Ross, the victim was "apprehensive" during the exam and interview. Additionally, the victim was reluctant to answer any questions about her genital area and did not want to speak about any touching. Ms. Ross stated such behavior is not "uncommon" for children. The forensic physical examination showed no damage to the victim's vagina or hymen. Ms. Ross noted, though, that with a child of that age, digital penetration would likely not leave any detectable evidence. Ms. Ross testified that in her professional experience with abuse cases involving digital penetration, absent extreme force, it is very unlikely for a physical exam to reveal any injuries to the genital area. In cases of familial sexual abuse, a lack of vaginal injury is also very common because the abuser is usually far less forceful with the victim. Ms. Ross noted even without injury she would never rule out sexual abuse because "the most important thing is what [the victim] is saying." After this testimony, the State rested and the defendant did not put on any additional proof.

After closing statements, the jury was instructed on the elements of rape of a child and aggravated sexual battery. During deliberations, the jury returned a question for the trial court. The jury asked: "It is unclear whether or not the touching that occurred happened multiple times from Jan. 2010 to Dec. 2010 or only once; can you clarify?" After consulting with both the State and the defendant, the trial court informed the jury as follows:

> My instructions to you [are] that you are to base your decision in this case, and your verdict, on the evidence you have heard in the courtroom. And your decision is to be based — or the verdict is to be rendered with reference to the charges that are embraced in the indictment. All right? All right.

Upon completion of the deliberations, the jury returned a verdict of guilty of aggravated sexual battery and of the lesser-included offense of criminal attempt to commit rape of a child. The judge polled the jury to confirm a unanimous verdict.

B. Sentencing

During the sentencing hearing, the defendant submitted as mitigating factors that his conduct "did not threaten serious bodily injury" and that he "was suffering from a mental . . . condition that significantly reduced the defendant's culpability." *See* Tenn. Code Ann. § 40-35-113(1),(8). In turn, the State argued the defendant's sentence should be enhanced because "the defendant [had] a previous history of criminal convictions or criminal behavior;" "the offense involved a victim and was committed to gratify the

defendant's desire for pleasure or excitement;" and "the defendant abused a position of . . . private trust . . . in a manner that significantly facilitated the commission or the fulfillment of the offense." *See* Tenn. Code Ann. § 40-35-114(1),(7),(14). The State also argued consecutive sentencing was appropriate because "the defendant [was] convicted of two . . . statutory offenses involving sexual abuse of a minor." *See* Tenn. Code Ann. § 40-35-115(b)(5). At the time of sentencing, the defendant was serving a nine-year term for aggravated sexual battery of one of the victim's friends. *See State v. Klein*, No. M2014-02340-CCA-R3-CD, 2016 WL 493248, at *1-2 (Tenn. Crim. App. Feb. 9, 2016), *perm. app. denied* (Tenn. June 23, 2016) (summarizing the facts of the defendant's prior charge).

The trial court accepted the first mitigating factor submitted by the defendant, finding the conduct did not threaten serious bodily harm. However, upon considering there was no factual basis to support it, the trial court rejected the defendant's argument that he suffered from a mental condition that reduced his culpability. The trial court determined all three of the enhancement factors submitted by the State were applicable. Accordingly, the trial court sentenced the defendant to concurrent ten-year sentences for each conviction.

Next, the trial court considered the State's request for consecutive sentencing based on the defendant's prior conviction for aggravated sexual battery. The trial court noted under "*State v. Wilkerson* . . . the [c]ourt is required to make . . . an analysis of the facts of the case" in order to apply consecutive sentencing. The trial court announced the following determination:

> The [d]efendant had previously been convicted of aggravated sexual [battery] of . . . [the victim's] friend, and then in the subject case before us today he stands convicted of the aggravated sexual [battery] and attempted rape of a child, which was his own child. Particularly disturbing to the [c]ourt that the [d]efendant would do this to a child . . . to which he was brought into contact with as a result of the friendship [the victim] had . . . with another, and then that likewise, the same act would . . . occur on his own child. . . . [P]articularly concerning to the court, the statements that [the victim] made in testimony that she just wanted to know that her father loved her. [That is] all she wanted. And I find that . . . is . . . residual physical and mental damage to the victim in this case to have to deal with the fact that one's own parent would do this, and then to articulate that the issue that remains is [the] question about whether the parent loves her.

Based on these facts, the trial court ordered the defendant's sentences in the instant matter to run consecutive with his prior conviction. On October 27, 2016, the defendant

filed a motion for a new trial which was denied on February 12, 2017. This appeal followed.

## ANALYSIS

On appeal, the defendant challenges both his convictions and sentence. The defendant argues there was insufficient evidence for a jury to convict him based on the jury's question during deliberations. Additionally, the defendant argues trial court's decision to bar questions about the polygraph results violated his right to cross-examination and to confront the witnesses against him. Finally, the defendant argues the trial court improperly set his sentence to run consecutively with his prior conviction. The State argues there was sufficient evidence to convict the defendant on both counts; it was proper to exclude questions about the polygraph; and the trial court acted within its discretion in sentencing the defendant. Upon our thorough review of the record, we agree with the State and affirm the judgments of the trial court.

### A. Sufficiency of the Evidence

When the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *See State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court has stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977); *Farmer v. State*, 343 S.W.2d 895, 897 (Tenn. 1961)). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008) (citing *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. *Dorantes*, 331 S.W.3d at 379 (*citing State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006)). This Court, when considering the sufficiency of the evidence, shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. *Id.*

The defendant was convicted of criminal attempt to commit rape of a child and aggravated sexual battery. Rape of a child is the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if the victim is more than three years of age but less than thirteen years of age. Tenn. Code Ann. § 39-13-522(a). "Sexual penetration" means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required. *Id*. § 39-13-501(7). A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense, intentionally engages in action or causes a result that would constitute an offense, if the circumstances surrounding the conduct were as the person believes them to be. *Id*. § 39-12-101(a)(1).

Aggravated sexual battery is unlawful sexual contact with a victim by the defendant or the defendant by a victim less than thirteen years of age. *Id*. § 39-13-504(a)(4). Sexual contact, in the relevant part is "the intentional touching of the victim's . . . intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's . . . intimate parts, if that intentional touching can be reasonably construed

as being for the purpose of sexual arousal or gratification." *Id*. § 39-13-501(6) (2010) (amended 2013). "Intimate parts" includes "semen, vaginal fluid, the primary genital area, groin, inner thigh, buttock or breast of a human being[.]" *Id*. at (2).

The State provided the following proof at trial. First, the State provided uncontested testimony that the victim was six years old at the time of the abuse. Second, the State presented testimony that the defendant digitally penetrated the victim while the defendant and the victim were in bed together watching television. The State pinpointed December as the month in which the abuse occurred with the victim's testimony, supported by her memory of seeing her grandparents in Long Island for Christmas. Based on this testimony, the State provided evidence to satisfy the elements of offenses for which the defendant was convicted. The defendant had unlawful sexual contact with a six year old by attempting to digitally penetrate her. We, therefore, find the evidence sufficient to sustain the jury's verdict.

The defendant argues there is insufficient evidence because the jury returned the following question: "It is unclear whether . . . the . . . touching that occurred happened multiple times from [January] 2010 to [December] 2010 or only once. Can you clarify?" The defendant theorizes that the proof from the State must not have been sufficiently clear if the triers of fact were unable to determine if it was one allegation or several. Therefore, the defendant argues there was not sufficient evidence to sustain the jury's verdict. We do not find this argument persuasive.

Procedurally, the defendant's argument fails because he cites no law in support of his claim that a question by the jury creates a presumption by this Court that the evidence submitted at trial was insufficient to support the verdict. As a result, the argument is waived. Tenn. R. App. P. 27(a)(7)(A) (requiring an argument to set forth: "the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on"). Ultimately, however, a question by a jury for a clarification does not create a presumption of insufficient evidence. *Cf. State v. Cravens*, No. 03C01-9309-CR-00319, 1994 WL 444623, at *3 (Tenn. Crim. App. Aug. 16, 1994) (determining there was no error in recharging the jury after the jury requested a clarification). Assuming, arguendo, the clarification request did raise such a presumption, as noted before, the State's proof was sufficient to support the jury's verdict.

The State argues the defendant's argument is not a sufficiency claim but instead is an election of offenses claim. On consideration, we find the State properly elected in this case. The State narrowed the jury's consideration to the December abuse. However, in child sexual abuse cases, "the [S]tate is not required to identify the particular date of the

chosen offense" and "a particular offense can often be identified without a date." *State v. Shelton,* 851 S.W.2d 134, 137 (Tenn. 1993). The prosecutor may ask the child victim "to describe unique surroundings or circumstances that help to identify an incident," which may include "identify[ing] an assault with reference to a meaningful event in [the child's] life, such as the beginning of school, a birthday, or a relative's visit." *Id.*

The direct examination by the State focused on the particulars of the December abuse. The victim not only testified to the acts of the defendant in December, but also the design of the comforter on the bed at the time; what she was watching on television; and her Christmas trip to see her grandparents in Long Island. While it can be inferred from the testimony that this abuse was not isolated to December, the State satisfied its burden to sufficiently narrow the jury's review of the abuse that occurred on a specific day in December. We conclude the victim's testimony sufficient to sustain the verdict. *See Shelton*, 851 S.W.2d at 137. Therefore, the defendant is not entitled to relief.

### B. Right to Cross-Examination

The defendant argues that forbidding questions about the results of the DCS polygraph examination concerning the prior allegation violated his right to cross-examination and his right to confront his accuser. The State argues that this restriction was proper, and it did not constrain the defendant's ability to cross-examine M.K. regarding her decision to remain in the marriage after the prior DCS investigation. Additionally, the State argues that to the extent there may have been a restriction, it was harmless error. After review, we agree with the State.

We need not address whether the polygraph results in of themselves are admissible. It is settled law that polygraph evidence is inadmissible. *State v. Damron*, 151 S.W.3d 510, 515-16 (Tenn. 2004). To avoid exclusion, the defendant asserts the polygraph examination was not offered to prove the truth of the matter asserted. The defendant argues that his motive for asking M.K. about the results of his DCS polygraph examination was to impeach M.K. We agree a defendant has the right to cross-examine witnesses to impeach their credibility or to establish that the witnesses are biased. *State v. Smith*, 893 S.W.2d 908, 924 (Tenn. 1994). However, the defendant was not denied this right.

The defendant cites two cases in support of his claim: *Ferguson v. United States*, 329 F.2d 923 (10th Cir. 1964) and *State v. Howell*, 868 S.W.2d 238 (Tenn. 1993). While these cases do address a defendant's right to confront his accuser, we do not find them applicable to the instant case. These cases indicate that an outright denial of a defendant's attempt to impeach a witness violates the Sixth Amendment; however, the trial court did not deny the defendant that opportunity. The defendant wished to show

that M.K. did not truthfully believe he was abusing his daughter and that M.K. fabricated the allegations to gain an advantage during the divorce. If, the defendant argues, M.K. truly believed he was abusing his daughter then she would not have remained in the marriage.

While the trial court did not allow specific questions about the polygraph, the defendant was allowed to, and did, question M.K. on her decision to remain in the marriage after the prior accusations were reviewed by DCS. On cross-examination M.K. was asked why she stayed with the defendant; she responded that it was because the allegations were unfounded. If the defendant failed the polygraph but then had been cleared by DCS, we agree there might have been some impeachment value in allowing the polygraph results. But the polygraph results were consistent with the DCS findings. The defendant was permitted to "liberally" pursue their theory on cross-examination even considering the exclusion of the polygraph results. *See Johnson v. State*, 477 S.W.2d 221, 223 (Tenn. Crim. App. 1971). Therefore the trial court did not abuse its discretion in excluding the polygraph results. *See id.*

While we do not agree the defendant's ability to liberally cross-examine the witness was infringed, to the extent it may have been, this constitutes harmless error. A violation of a right to cross-examination has been characterized as a trial error which is subject to the harmless error doctrine. *Momon v. State*, 18 S.W.3d 152, 166 (Tenn. 1999), *on reh'g* (Mar. 30, 2000). "Harmless error review looks . . . to the basis on which the jury actually rested its verdict." *Sullivan v. Louisiana*, 508 U.S. 275, 278 (1993).

> [C]ourts often identify certain factors to aid in discerning the actual basis on which a jury rested its verdict. For example, in [*State v. Howell*, 868 S.W.2d 238, 253 (Tenn. 1993)], this Court stated that a reviewing court determining whether the denial of effective cross-examination is harmless beyond a reasonable doubt should consider the following factors: (1) the importance of the witness's testimony in the prosecution's case; (2) the cumulative nature of the testimony; (3) the presence or absence of evidence corroborating or contradicting the witness on material points; (4) the extent of cross-examination otherwise permitted; and (5) the overall strength of the prosecution's case.

*See Howell*, 868 S.W.2d 238, 253 (Tenn. 1993) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 685-86 (1986)). While M.K.'s testimony was critical to the prosecution's case, the consistency of the polygraph results with the DCS's conclusion points to the polygraph evidence as cumulative and redundant. To the extent the defendant wished to know why M.K. stayed in the marriage after the DCS investigation, she stated it was because she believed the defendant had not abused the victim at that time. She went on

to clarify though that the circumstances surrounding the December abuse were very different from the prior accusation. A reasonable jury could conclude that the facts surrounding the December abuse were sufficiently different from the facts surrounding the prior accusation to support the defendant's conviction. Therefore, the defendant is not entitled to relief.

### C. Consecutive Sentencing

We next review the defendant's allegation that the trial court erred in ordering his sentence to be served consecutively with his prior sentence. This Court reviews within-range sentences imposed by the trial court under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The party appealing a sentence bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts. Further, in order to comply with the Sentencing Act, the trial court must state on the record the statutory factors it considered and the reasons for the ordered sentence. Tenn. Code Ann. § 40-35-210(e); *Bise*, 380 S.W.3d at 705-06. "Mere inadequacy in the articulation of the reasons for imposing a particular sentence, however, should not negate the presumption [of reasonableness]." *Bise*, 380 S.W.3d at 705-06. Thus, a sentence imposed by a trial court "should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id*. at 709-10; *State v. Pollard*, 432 S.W.3d 851, 859-60 (Tenn. 2013) (applying the abuse of discretion standard with a presumption of reasonableness to consecutive sentencing).

It is well settled that the trial court "may order sentences to run consecutively if it finds by a preponderance of the evidence that one or more of the statutory criteria exists." *State v. Black*, 924 S.W.2d 912, 917 (Tenn. Crim. App. 1995). Here, the trial court found the statutory criteria existed in the record to warrant consecutive sentencing. Specifically, "[t]he defendant [was] convicted of two (2) or more statutory offenses involving sexual abuse of a minor." Tenn. Code Ann. § 40-35-115(b)(5). The record supports the trial court's imposition of consecutive terms.

The trial court outlined its review of the record in accordance with *State v. Wilkerson*, 905 S.W.2d 933 (Tenn. 1995). First, the trial court looked at the relationship between the defendant and his victims. The trial court stated it was "disturbing to the [c]ourt that the [d]efendant would do this to a child . . . to which he was brought into contact with as a result of the friendship [the victim] had . . . with another, and then that likewise, the same act would . . . occur on his own child . . ." Second, the trial court discussed the extent of the residual physical and mental damage to the victim stating it was

[P]articularly concerning to the court, the statements that [the victim] made in testimony that she just wanted to know that her father loved her. [That is] all she wanted. And I find that . . . is . . . residual physical and mental damage to the victim in this case to have to deal with the fact that one's own parent would do this, and then to articulate that the issue that remains is [the] question about whether the parent loves her.

Upon review, we conclude the trial court properly considered the factors in section 40-35-115(b)(5) and did not abuse its discretion by imposing consecutive terms.

The defendant also argues that the State chose to pursue the case against the victim's friend first because the lack of a special relationship in the first case increased the likelihood of consecutive sentencing in the instant case. The defendant argues this tactic "puts too much power in the executive branch." However, the defendant has failed to cite any applicable law in support of his claim. We, therefore, deem this argument waived. *See* Tenn. R. App. P. 27. Courts have routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue. *See State v. Schaller*, 975 S.W.2d 313, 318 (Tenn. Crim. App. 1997).

However, even if we were to take as true the assertion that the State chose to try the cases in that order to ensure enhancement, we conclude that is a proper exercise of prosecutorial discretion. *Cf. State v. Culbreath*, 30 S.W.3d 309, 313 (Tenn. 2000). A District Attorney General is an elected constitutional officer whose function is to prosecute criminal offenses in his or her circuit or district. Tenn. Const. art. VI, § 5; *Ramsey v. Town of Oliver Springs*, 998 S.W.2d 207, 209 (Tenn. 1999). The District Attorney General "[s]hall prosecute in the courts of the district all violations of the state criminal statutes and perform all prosecutorial functions attendant thereto . . . ." Tenn. Code Ann. § 8-7-103(1). The prosecutor's discretion to seek a warrant, presentment, information, or indictment is extremely broad and subject only to certain constitutional restraints. *Ramsey*, 998 S.W.2d at 209. The State acted within its discretion; therefore, the defendant is not entitled to relief.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
J. ROSS DYER, JUDGE

- 13 -